JOEL R. MEYER (SBN 247620)
  joel.meyer@btlaw.com
JOSEPH M. WAHL (SBN 281920)
  joseph.wahl@btlaw.com
BRIAN T. NGUYEN (SBN 336704)
  brian.nguyen@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Attorneys for Plaintiff and Counter-Defendant L.A. SPORTS PROPERTIES, INC. and Plaintiff ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| L.A. SPORTS PROPERTIES, INC., a California corporation, and ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>DARREN SCHIELD, an individual, NOI SCHIELD, an individual, SCHIELD WOOD PRODUCTS, LLC, a Nevada Limited Liability Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-03664-MCS-MAA<br><br>**PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT AGAINST DARREN SCHIELD, NOI SCHIELD, AND SCHIELD WOOD PRODUCTS, LLC**<br><br>*[Honorable Mark C. Scarsi]*<br><br>Trial Date:   Not Set |
| DARREN SCHIELD,<br><br>Counterclaimant,<br><br>v.<br><br>L.A. SPORTS PROPERTIES, INC., a California corporation,<br><br>Counter-Defendant. | |

43924995.10

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

Plaintiffs L.A. SPORTS PROPERTIES, INC. ("LA Sports") and ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST (the "Trust") (collectively, "Plaintiffs") file this First Amended Complaint against DARREN SCHIELD, NOI SCHIELD, and SCHIELD WOOD PRODUCTS, LLC (collectively, "Defendants") as follows:

## THE PARTIES

1.  Plaintiff LA Sports is a California entity with its principal place of business in Los Angeles, California.

2.  Plaintiff Rochelle ("Shelly") Sterling is an individual living in the county of Los Angeles, California, and acts as Trustee of the Trust.

3.  Defendant Darren Schield ("Schield") is an individual residing at 1308 E. Bruin Loop, Hayden, Idaho 83835.

4.  Defendant Noi Schield is an individual residing at 1308 E. Bruin Loop, Hayden, Idaho 83835. Until recently, and during the period relevant to this action, Schield and Noi Schield resided at 1682 Sycamore Canyon Drive, Westlake Village, California 91361.

5.  Defendant Schield Wood Products, LLC ("Schield Wood Products") is a Nevada limited liability corporation with no identifiable business address.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action because there is diversity, Plaintiffs seek more than $75,000 in damages, and Defendants removed this action to the United States District Court for the Central District of California on May 2, 2024. Venue is proper because a substantial portion of the events at issue in this case occurred in Los Angeles, California.

## GENERAL ALLEGATIONS

7.  Darren Schield and Noi Schield are the only managers of Schield Wood Products. On information and belief, they are the only owners/members of Schield Wood Products.

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

2

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

8. Schield Wood Products operated out of Darren Schield and Noi Schield's previous personal residence at 1682 Sycamore Canyon Drive, Westlake Village, California 91361. Schield Wood Products received correspondence, including tax documents, at this address. Plaintiffs are informed and believe that Schield Wood Products only operated out of the Schields' personal address, rather than any sort of commercial office space.

9. Plaintiffs are informed and believe that other than the Schields, Schield Wood Products has no other employees, managers, or officers. The Schields used Schield Wood Products as a mere shell and instrumentality to perpetrate and aid and abet their fraud against Plaintiffs.

10. Plaintiffs are informed and believe that Schield Wood Products conducts no business whatsoever other than its ownership of CDA Wood, LLC discussed herein. Plaintiffs are informed and believe that Schield Wood Products is undercapitalized and has failed to maintain corporate formalities. Indeed, the Schields have disregarded legal formalities and failed to maintain an arm's-length relationship between themselves and Schield Wood Products.

11. To the extent Schield Wood Products ever had any capital or bank accounts, Plaintiffs are informed and believe the Schields shared the same bank accounts with Schield Wood Products, comingling the funds of the entity with the Schields' personal funds.

12. Adherence to the fiction of the separate existence between Schield Wood Products as an entity distinct from the Schields would permit an abuse of the corporate privilege, sanction fraud, and promote injustice, as the Schields created and are using their corporate entity for improper purposes.

13. Schield started working for the Trust in 1994 (which eventually included Beverly Hills Properties, LLC and its affiliated entity LA Sports, both of which are wholly owned by the Trust). Schield was a highly paid employee, earning on average $715,000 in annual compensation from 2018 to 2023. On June 30, 2023,

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

3

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

Schield was terminated for cause. At all relevant times, Schield served as the CFO of the Trust's entities.

### A. Schield Gives His Friend David Gilbertson 10% Stake in Ophde's Net Profits.

14. Schield executed an agreement between LA Sports and Ophde Advisors, LLC ("Ophde"), dated June 29, 2018 ("Alliance Agreement"). As explained in the Alliance Agreement, Ophde was purportedly to use its services to strategically identify and secure life insurance settlements to restructure and securitize into bonds to be sold.

15. Ophde was not a sophisticated entity with a history of financial success. Rather, Ophde appears to be primarily operated by one individual, Julian Samuels. Schield's close friend David Gibertson ("Gilbertson"), is reportedly one of Ophde's "special advisors." While Ophde and LA Sports are the only parties to the Alliance Agreement, the agreement awarded Schield's friend Gilbertson 10% of all net profits (up to $2 million) generated by the Alliance Agreement. There is no evidence that Gilbertson put up any of his own capital or did anything whatsoever to warrant 10% of the potential net profits from the deal. On information and belief, part of Schield's motivation for entering into the Alliance Agreement was to enrich his friend Gilbertson and, in turn, secure good will that would provide Schield with more opportunities in the future where he could enrich himself.

16. The Alliance Agreement called for LA Sports to wire Ophde $2,750,000 within 90 days in two installments, one installment of $2,000,000 and one installment of $750,000. According to LA Sports' financial records, LA Sports wired Ophde $2,000,000 in 2018. According to Schield, he "prudently withheld $750,000 pending actual returns," thereby acknowledging the risky nature of the transaction.

17. It did not take long for LA Sports' investment to start to vanish. In 2019, approximately $608,000 immediately disappeared from LA Sports'

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

4

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

investment, as a result from what Ophde claimed were fraudulent transfer requests.

18. Despite having the right to inspect Ophde's books, Schield did not request records until after more than $608,000 mysteriously disappeared. Even after Ophde had been shown to be incompetent at handling money (or worse), Schield wired another $100,000 to the escrow agent for the benefit of Ophde on July 2, 2019.

19. On Schield's watch, Ophde spent or absconded with LA Sports' entire investment (except perhaps those funds that Ophde claims it allowed to be stolen by third-parties). LA Sports never recuperated any of its $2,100,000 investment.

**B.     Schield Invests LA Sports' Money in CDA Wood.**

20. In or around late March 2019, Schield's close friend, Gilbertson, arranged for a meeting between Schield and Chris Bartimioli, the principal of CDA Wood, LLC ("CDA Wood"). According to CDA Wood's website, CDA Wood manufactures and sells aged wood for construction purposes in Idaho. In March 2019, CDA Wood was a struggling startup in desperate need for cash.

21. The Trust and its entities have never had any assets or business interests in Idaho. Nor is LA Sports a commercial lender in the business of lending money to other businesses or people. There is no legitimate business purpose that would justify providing CDA Wood any loan. Yet, on April 2, 2019, Schield signed a loan agreement with CDA Wood, on behalf of LA Sports ("CDA Wood Loan #1"). According to the CDA Wood Loan #1, LA Sports provided a loan of $2,600,000 to CDA Wood, with an interest rate of 6%, with a 15-year amortization schedule and 5-year term with balloon payment. On April 4, 2019, at Schield's direction, LA Sports wired $2,600,000 to CDA Wood.

22. Shortly after entering into CDA Wood Loan #1, Schield and Noi Schield filed articles of organization with the Nevada Secretary of State, establishing Schield Wood Products. Schield Wood Products was created to be the Schields' shell company, to better protect him from potential liability for the

43924995.10                                5

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

kickbacks he would soon receive.

23. Further, on April 2, 2019, Schield caused LA Sports to give a personal loan signed to Bartimioli (the "Bartimioli Agreement"). According to the Bartimioli Agreement, LA Sports agreed to loan Bartimioli personally the sum of $89,000, with an interest rate of 6%, with an amortization schedule of 10-years. LA Sports wired these funds on April 4, 2019. Again, there is no legitimate business justification for LA Sports to provide such a loan to this random person in Idaho.

24. LA Sports has recently discovered Schield's true reasons for agreeing to loan LA Sports' money to a struggling Idaho wood company and its principal. Following the loans, CDA Wood gave Schield Wood Products a 17.5% ownership interest in CDA Wood and a 14.17% ownership stake in SSB Licensing, LLC (the entity that holds the patent for CDA Wood). While Schield has recently attempted to explain this secret entity he created (and named after himself) and this secret ownership interest by claiming he was actually holding these interest in these entities for the benefit of LA Sports, the facts show that these ownership interests were kickbacks he received in exchange for providing the substantial loans to this struggling company. Although they never invested a single dollar of their own money in CDA Wood or SSB Licensing, the Schields continue to receive K-1s for their improper ownership of these entities through Schield Wood Products.

25. Additionally, at the same time Schield was awarded his equity, CDA Wood also awarded Gilbertson a 17.5% ownership interest in CDA Wood, as a kickback for facilitating the business-saving loan from LA Sports.

26. In or around December 2020, Schield was aware of and understood that CDA's business was again strapped for cash. Despite a proven track record of failure, rather than let CDA Wood (and now a business he owns) fail, on December 1, 2020, Schield signed a second loan agreement with CDA Wood, on behalf of LA Sports ("CDA Wood Loan #2"). According to the CDA Wood Loan #2, LA Sports provided a loan of $550,000 to CDA Wood, with a term of 2 years. On December 3,

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

43924995.10                                6

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

2020, LA Sports wired $550,000 to CDA Wood. Schield made this additional loan to CDA Wood in order to prop up his own ownership interest in the fledging company.

27. CDA Wood and Bartimioli only repaid LA Sports a portion of their debts.

28. Schield was aware that his unauthorized transactions and other dishonest activities put his employment status in jeopardy. Knowing termination was imminent, Schield sought to protect his ownership interest in CDA Wood, by ensuring CDA Wood would never have to pay back LA Sports' loans in full. He also hoped resolving these debts would prevent anyone in the future from discovering his self-dealing where he secured an ownership interest for him and his wife.

29. On March 27, 2023, LA Sports and CDA Wood entered into two payoff settlement agreements with CDA Wood, where he wrote-off a significant portion of the money owed by CDA Wood (which he now owned 17.5% of) to LA Sports. CDA Wood repaid the debts owed under the payoff agreements, but at a loss in excess of $1 million to LA Sports.

30. Schield also apparently chose to not enforce LA Sports' personal loan to Bartimioli. When Bartimioli stopped making payments, Schield did not document or seek the repayment of the remainder of the balance as due and owing, approximately $70,000.

**C.     Schield Invests the Trust's Money into Private Equity Funds.**

31. In early 2023, the Trust discovered that Schield invested approximately $300,000,000 of the Trust's funds with a private equity firm named Banner Ridge without the permission or knowledge of Shelly Sterling. Shelly Sterling also discovered that Schield had been forging her name to various documents to facilitate transactions without her permission. Schield made these investments despite knowing that Shelly Sterling was not interested in investing money in private equity.

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

7

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

Shelley Sterling sought to unwind this deal as fast as possible, which did occur, but at a loss of more than $100,000,000.

32. Again, Schield's choice to invest in Banner Ridge was also the result of self-dealing and his breaches of his duty of loyalty. Schield invested the Trust's money with Banner Ridge because he wanted to invest his personal funds with Banner Ridge but he failed to meet Banner Ridge's minimum capital requirements. However, due to Schield's investment of $300,000,000 of the Trust's funds, Banner Ridge waived its minimum capital requirement as to Schield, allowing him to invest personally in the fund.

33. On information and belief, in his role of CFO, Schield also sought out to and actually did personally benefit from other investment deals also made on behalf of the Trust and its entities, including but not limited to investments with Siguler Guff, Thorofare Asset Based Lending Fund, and Monomoy Properties. Plaintiffs' investigation into these investments and others is ongoing.

**D.  Schield Uses LA Sports' Money to Prop-Up His Own Risky Investments in Costa Rica.**

34. Schield also committed LA Sports to invest hundreds of thousands of dollars in forestry projects (Clavo 1) and farms (Cypress) in Costa Rica, after he and Gilbertson already held significant equity in the projects through their personal investments in the projects.

35. On May 12, 2018, in his personal capacity, Schield entered into a joint venture agreement and promissory note with the Costa Rican company Atromitos S.A. ("Atromitos"). Schield personally invested $300,000 in Atromitos in exchange for 6% in equity. Gilbertson also invested $850,000 into the Atromitos deal in exchange for 17% in equity.

36. After Schield was already into Atromitos for $300,000, he invested $400,000 of LA Sports' money in the project ($150,000 re "LASP option agreement" for Cypress and $250,000 for Clavo 1). By October 17, 2018, David

43924995.10    8

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Solomon of NBI Blueprints, Ltd. ("Blueprints"), emailed Schield claiming to have been speaking with Gilbertson about how Blueprints can help reduce the risk of the forestry investment as the investors' management partner. On or about November 7, 2018, Schield signed a "Subscription for shares in Blueprints NBI Ltd" on behalf of LA Sports. On November 21, 2018, LA Sports wired $75,000 to Blueprints re "Investor term sheet Nov. 7, 2018."

37. On November 10, 2018, Schield, this time on behalf of LA Sports, signed a term sheet with Atromitos, the Global Sustainability Initiative, and Blueprints. This term sheet described the financing terms for the Clavo 1 and Cypress projects. According to the term sheet, LA Sports would provide $1,050,000 in funding for Cypress and Clavo 1, inclusive of the $400,000 already financed. The Clavo 1 post-investment cap table references Schield's personal equity stake in the deal of 6% (for his $300,000), as well as Gilbertson's 17% stake.

38. By August 30, 2019, the managers of the Costa Rican investment started making excuses regarding why the disbursement of investment dividends were delayed. Shortly thereafter, on September 6, 2019, Schield was informed that LA Sports' $150,000 investment into Cypress was lost forever because Schield failed to exercise his option to purchase, thereby losing the entire investment. Schield went back and forth with the principals of Atromitos regarding why Schield was justified in not investing additional capital following the $150,000 initial investment. When Atromitos was unmoved, Schield acknowledged the conflict that was always present: "I can take whatever decision I deem suit and that may and probably different then what L.A. Sports Properties will take. We are not one and the same… they are billionaires and don't care about wasting money for principal/ego. I am not and want what's best for the bottom line. I'm stuck between a rock and a hard place being in the situation I'm in and I will probably be conflicted out of having any influence on L.A. Sports Properties, if this drags on until October."

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10    9
PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

39. LA Sports' investments into Schield and Gilbertson's Costa Rican forestry and farm projects were total losses.

### E. Plaintiffs Discover Schield's Self-Serving Transactions.

40. On June 30, 2023, Shelly Sterling terminated Schield's employment for cause.

41. In 2024, Plaintiffs discovered Schield has been engaging in blatant self-dealing in complete disregard of his duties of loyalty to Plaintiffs. No earlier than February 2024 did Plaintiffs discover Schield's personal investments discussed herein.

## FIRST CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY
### (Plaintiffs Against Darren Schield)

42. The foregoing paragraphs 1-41 are incorporated by reference as if fully restated herein.

43. Schield owed fiduciary duties to Plaintiffs, including, but not limited to, a duty of loyalty and a duty of care. As CFO, Schield was in a position to control Plaintiffs' financial transactions. Plaintiffs relied on Schield to act in their best interests in carrying out Schield's duties of CFO. Unfortunately, during at least the last five years of his employment with Plaintiffs, Schield used his position of trust and power, and vice-like control over Plaintiffs' finances to enrich himself and his friends. Examples of the self-dealing transactions (that Plaintiffs are currently aware of) are discussed below.

44. In 2018, Schield personally invested at least $300,000 into Atromitos S.A. ("Atromitos"). Schield's close friend, Gilbertson, was also invested $850,000 into the Atromitos deal. This foreign deal was speculative and risky. Thereafter, in order to prop up his and his friend's investments, Schield invested $400,000 of LA Sports' money into the Atromitos deal, with an additional $75,000 paid to NBI Blueprints to serve in a management role of the investment. In 2019, after the Atromitos deal went bad and LA Sports' money was lost, Schield acknowledged to

43924995.10

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

10

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

a third-party that he was conflicted, as what was best for him personally was different than what was best for LA Sports, his fiduciary.

45. Schield also engaged in self-dealing with respect to CDA Wood. CDA Wood was a start-up company in desperate need of cash in 2019. In April 2019, Schield agreed to loan $2.6 million to prop up CDA Wood and to obtain a kickback for him and his wife. This loan provided CDA financing on terms that were extremely favorable to CDA Wood, and better than what CDA Wood could obtain on the market. In exchange for this loan, the Defendants received interests in CDA Wood and SSB Licensing as kickbacks. Specifically, despite never having contributed a dollar of capital to CDA Wood or SSB Licensing, Schield Wood products was given a 17.5% ownership stake in CDA Wood and 14.17% ownership stake in SSB Licensing. Schield Wood Products receives K1s from CDA Wood and SSB Licensing. Schield and Noi Schield use their interest in CDA Wood and SSB Licensing for tax breaks.

46. By December 2020, CDA burned through the $2.6 million in funding already provided by LA Sports. Determined to not let this business fail where he and his friend have personal stakes, Schield loaned another $550,000 of LA Sports' money to CDA Wood on December 3, 2020.

47. In 2023, the Trust discovered that Schield invested approximately $300,000,000 of the Trust's funds with a private equity firm named Banner Ridge without the permission or knowledge of Shelly Sterling. Mrs. Sterling also discovered that Schield had been forging her name to various documents to facilitate transactions without her permission. Schield was aware that the Trust would never approve of such private equity investments. Schield invested the Trust's money with Banner Ridge because he wanted to invest his personal funds with Banner Ridge but he failed to meet Banner Ridge's minimum capital requirements. However, due to the substantial investment of the Trust's funds, Banner Ridge waived its minimum capital requirement as to Schield, allowing him to invest personally in the fund. The

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

11

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

Trust ultimately lost tens of millions of dollars on this deal.

48. While Plaintiffs' investigation is currently ongoing, on information and belief, Schield used the Trust's investments into Siguler Guff, Thorofare Asset Based Lending Fund, and Monomoy Properties (and possibly many others), to benefit himself by gaining access to investment platforms and engage in self-dealing.

49. In early 2023, when Schield understood that his job was in jeopardy because of his improper investments, Schield sought to protect Defendants' (and Gilbertson's) interest in CDA Wood. On April 2, 2019, Schield wrote down hundreds of thousands of dollars off the amounts outstanding by entering into payoff settlement agreements with CDA Wood. Furthermore, Schield failed to pursue approximately $70,000 that Bartimioli still owed to LA Sports.

50. In 2019, Schield also used LA Sports' money to benefit his friend Gilbertson in the Ophde deal in order to foster good will with Gilbertson. Gilbertson did not contribute any capital to Ophde. Yet, while Ophde and LA Sports are the only parties to the Alliance Agreement, Schield sought to enrich his friend by carving out 10% of Ophde's potential net profits for Gilbertson. While this deal was ultimately a total loss, Schield's intent was to enrich Gilbertson and build good will for himself, rather than his fiduciary LA Sports.

51. Plaintiffs were damaged in excess of $30 million as a result of Schield's breaches of his fiduciary duties to Plaintiffs.

## SECOND CAUSE OF ACTION - FRAUD

### (Plaintiffs Against All Defendants)

52. The foregoing paragraphs 1-51 are incorporated by reference as if fully restated herein.

53. Schield owed fiduciary duties to Plaintiffs, including, but not limited to, a duty of loyalty and a duty of care. Plaintiffs relied on Schield to act in their best interests in carrying out Schield's duties of CFO.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

43924995.10

12

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

54. Shortly after entering into his unauthorized loan agreements with CDA Wood and Bartimioli on April 2, 2019, the Schields created Schield Wood Products to defraud LA Sports by taking a secret ownership stake in CDA Wood and SSB Licensing. In exchange for authorizing LA Sports' loans to CDA Wood, CDA Wood provided Schield with the kickbacks of 17.5% ownership stake in CDA Wood and a 14.17% ownership stake in SSB Licensing. Schield had a duty to disclose all material information to LA Sports, including, but not limited to, the fact that he received a kickback due to LA Sports' loan to CDA Wood. Schield failed to disclose this material fact, as he knew that doing so would expose his self-dealing.

55. As a result of Schield Wood Products' ownership interest in CDA Wood and SSB Licensing, Schield Wood Products receives annual schedule K-1s from CDA Wood and SSB Licensing, despite the fact that Schield Wood Products (or the Schields) has never itself contributed any equity or any other type of capital to CDA Wood or SSB Licensing. Bartimioli, the principal owner of CDA Wood and SSB Licensing, stated that CDA Wood's wood aging patent has been valued in excess of $30 million.

56. In early 2023, the Trust discovered that Schield invested approximately $300,000,000 of the Trust's funds with a private equity firm named Banner Ridge without the permission or knowledge of Shelly Sterling. Mrs. Sterling also discovered that Schield had been forging her name to various documents to facilitate transactions without her permission. Schield intentionally failed to disclose this investment to Mrs. Sterling because Schield wanted to invest his personal funds with Banner Ridge but he failed to meet Banner Ridge's minimum capital requirements. Due to the Trust's investment, Banner Ridge waived its minimum capital requirement as to Schield, allowing him to invest personally in the fund. The Trust ultimately lost tens of millions of dollars on this deal.

57. On information and belief, Schield engaged in conduct similar to that described with Banner Ridge, with other investment opportunities, including but not

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

13

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

1  limited to, Siguler Guff, Thorofare Asset Based Lending Fund, and Monomoy
2  Properties.
3      58.    Defendants' concealment and intentional acts were a substantial factor
4  in causing Plaintiffs' harm.
5      59.    Based on Defendants' fraudulent conduct, Plaintiffs have suffered
6  damages in excess of $30 million.

## THIRD CAUSE OF ACTION – AIDING AND ABETTING FRAUD
### (LA Sports Against Noi Schield and Schield Wood Products)

9      60.    The foregoing paragraphs 1-59 are incorporated by reference as if fully
10 restated herein.
11     61.    Through their cooperation with Schield, Noi Schield and Schield Wood Products knew that Schield was defrauding LA Sports. Noi Schield and Schield Wood Products cooperated with and facilitated that fraud by giving substantial assistance and encouragement to Schield to engage in his wrongful conduct. Indeed, the only reason Schield and Noi Schield created Schield Wood Products was to aid in defrauding LA Sports. On information and belief, Noi Schield and Schield Wood Products assisted Schield by sharing Schield's kickbacks and holding wrongfully obtained funds in joint bank accounts. Furthermore, Noi Schield and Schield Wood Products assisted Schield by working with Schield to obtain the 17.5% ownership stake in CDA Wood and 14.17% ownership stake in SSB Licensing, which they obtained in the name of Schield Wood Products for the benefit of both Schield and Noi Schield. Schield Wood Products was a willing participant in this fraud, as was its alter-ego, Noi Schield. Defendants knowingly concealed these facts, as well as their interest in CDA Wood and SSB Licensing from LA Sports.
25     62.    This conduct in aiding and abetting Schield's fraud as alleged herein was a proximate cause of the harm to LA Sports in a sum according to proof.

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

14

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

## FOURTH CAUSE OF ACTION - AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (LA Sports Against Noi Schield and Schield Wood Products)

63. The foregoing paragraphs 1-62 are incorporated by reference as if fully restated herein.

64. Schield owed fiduciary duties to LA Sports. Noi Schield and Schield Wood Products understood that Schield was an officer of LA Sports, that Schield owed fiduciary duties to LA Sports, and that Schield was in breach of those fiduciary duties. Noi Schield and Schield Wood Products cooperated with and facilitated that fraud by giving substantial assistance and encouragement to Schield to engage in his wrongful conduct. On information and belief, Noi Schield and Schield Wood Products assisted Schield by sharing Schield's kickbacks. Furthermore, Noi Schield and Schield Wood Products assisted Schield by working with Schield to obtain the 17.5% ownership stake in CDA Wood and 14.17% ownership stake in SSB Licensing, which they obtained in the name of Schield Wood Products for the benefit of both Schield and Noi Schield.

65. Additionally, on information and belief, Noi Schield encouraged Schield's other breaches of duties discussed herein.

66. This conduct in aiding and abetting Schield's fraud as alleged herein was a proximate cause of the harm to LA Sports in a sum according to proof.

## FIFTH CAUSE OF ACTION - VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Plaintiffs Against All Defendants)

67. The foregoing paragraphs 1-66 are incorporated by reference as if fully restated herein.

68. California Business & Professions Code § 17200, et seq. ("UCL") prohibits unfair competition in, inter alia, any unlawful, unfair business or fraudulent acts or practices. California Business and Professions Code § 17204

43924995.10

15

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

allows an entity injured by such acts or practices to prosecute a civil action for violation of the UCL.

69. As an officer for the Trust and its entities, Schield owed Plaintiffs fiduciary duties, including, but not limited to the duty to serve the best interests of Plaintiffs and the duty to disclose material facts to Plaintiffs.

70. While employed by Plaintiffs, Schield received kickbacks from various entities including, CDA Wood and SSB Licensing, due to loans of LA Sports' money that Schield made to CDA Wood. Noi Schield and Schield Wood Products assisted Schield in his fraud. Additionally, Schield forged Shelly Sterling's name on various transaction papers.

71. Plaintiffs are informed and believe that Defendants conduct was part of a conspiracy, created with the intent and purpose of defrauding Plaintiffs.

72. As a direct and proximate result of the Defendants' unlawful, unfair and fraudulent conduct, Plaintiffs have lost money within the meaning of Business and Professions Code sections 17203 and 17204. Accordingly, Plaintiffs are entitled to restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For damages against Defendants in an amount to be determined at trial but currently estimated to exceed $30,000,000 plus interest and other fees and costs;
2. Disgorgement of Schield's compensation for years 2018 through 2023 totaling $4,281,600;
3. Injunctive relief as appropriate;
4. Punitive damages;
5. For costs of suit, including reasonable attorneys' fees as authorized by law;
6. Pre-judgment interest; and

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

16

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

7. For such other and further relief as the Court deems just and proper.

Dated: August 7, 2024

**BARNES & THORNBURG LLP**

By: /s/Joel R. Meyer
Joel R. Meyer
Joseph M. Wahl
Brian T. Nguyen
Attorneys for Plaintiff and Counter-Defendant
L.A. SPORTS PROPERTIES, INC. and
Plaintiff ROCHELLE STERLING as trustee of
THE STERLING FAMILY TRUST

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

17

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT

## JURY DEMAND

Plaintiffs L.A. Sports Properties, Inc. and Rochelle Sterling as Trustee of The Sterling Family Trust hereby demand a jury trial for all issues triable by a jury.

Dated: August 7, 2024         **BARNES & THORNBURG LLP**

By: _____/s/Joel R. Meyer_____
Joel R. Meyer
Joseph M. Wahl
Brian T. Nguyen
Attorneys for Plaintiff and Counter-Defendant L.A. SPORTS PROPERTIES, INC. and Plaintiff ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST

Barnes & Thornburg LLP
Attorneys At Law
Los Angeles

43924995.10

18

PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS THE TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT