Stanley C. Morris (State Bar No. 183620)
scm@cormorllp.com
Brian T. Corrigan (State Bar No. 143188)
bcorrigan@cormorllp.com
CORRIGAN & MORRIS LLP
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90401
Telephone: 310.394.2828
Facsimile: 310.394.3825

*Attorneys for Defendants Darren Schield,
Noi Schield, and Schield Wood Products, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. SPORTS PROPERTIES, INC., a California corporation, ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST,<br><br>       Plaintiffs,<br><br>v.<br><br>DARREN SCHIELD, an individual, NOI SCHIELD, an individual, SCHIELD WOOD PRODUCTS, L.L.C., a Nevada Limited Liability Corporation; and DOES 1 through 50, inclusive,<br>       Defendants, | **Case No. CV24-03664-MCS-MAAx**<br>**Judge: Mark C. Scarsi**<br><br>**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT; AND**<br><br>**DEFENDANT DARREN SCHIELD'S AMENDED COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED ON ALL CLAIMS AND COUNTERCLAIMS** |
| DARREN SCHIELD,<br>       Counterclaimant,<br><br>v.<br><br>L.A. SPORTS PROPERTIES, INC., a California corporation, ROCHELLE STERLING as trustee of THE STERLING FAMILY TRUST,<br>       Counter-Defendants. | |

Defendants, DARREN SCHIELD, NOI SCHIELD, SCHIELD WOOD PRODUCTS, L.L.C., ("Schield Wood", and with Darren Schield and Noi Schield, collectively, the "Defendants"); and Counterclaimant, DARREN SCHIELD, hereby answer the PLAINTIFFS L.A. SPORTS PROPERTIES, INC. AND ROCHELLE STERLING AS TRUSTEE OF THE STERLING FAMILY TRUST'S FIRST AMENDED COMPLAINT (the "FAC") in this action as follows:

## GENERAL RESPONSE

Except as expressly admitted herein, Defendants deny any and all material allegations in the FAC. The numbered paragraphs of this Answer correspond to the paragraphs as numbered in the FAC. To the extent paragraphs in the FAC are grouped under headings, Defendants generally respond that such headings and groupings are conclusions of law or fact and deny each and every such allegation made or implied by such headings and groupings.

To the extent that the FAC attempts to characterize certain alleged facts in a conclusory manner, such as "fraudulent," "kickback," "wrongful," "illegal," or "knowingly," Defendants respond generally that such allegations constitute pejoratives or conclusions and do not constitute allegations of fact requiring a response. To the extent such allegations may be construed as allegations of fact, Defendants object to and deny each such allegation.

## THE PARTIES

1.      Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 1 and, on that basis, deny such allegations.

2.      Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 2 and, on that basis, deny such allegations.

3.      Defendants admit that Darren Schield is an individual who resides, at the time of this Answer, at 1308 E. Bruin Loop, Hayden, Idaho 93835. Except as expressly admitted, Defendants deny each and every allegation in paragraph 3.

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

4.      Defendants admit that Noi Schield is an individual who resides, at the time of this Answer, at 1308 E. Bruin Loop, Hayden, Idaho 93835. Defendants admit that Darren and Noi Schield previously resided at 1682 Sycamore Canyon Drive, Westlake Village, California 91361. Except as expressly admitted, Defendants otherwise deny each and every allegation in paragraph 4.

5.      Defendants admit Schield Wood Product, L.L.C. is a Nevada limited liability company. Except as expressly admitted, Defendants otherwise deny each and every allegation in paragraph 5.

## JURISDICTION AND VENUE

6.      Defendants admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) based on diversity of citizenship because the defendants, Darren Schield and Noi Schield reside in Idaho, and are the sole members of Schield Woods Products, L.L.C., a Nevada corporation; and the Plaintiff, L.A. Sports Properties, Inc., is a California corporation. Defendants admit that at certain times, prior to moving to Idaho in 2023, Darren Schield and Noi Schield resided in Los Angeles County, and that venue for this action is proper in this Court pursuant to 28 U.S.C. §1391(b)(2). Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 6.

## GENERAL ALLEGATIONS

7.      Defendants admit that Darren Schield is the only managing member of Schield Wood Products, L.L.C. and that Noi Schield is a non-managing member of Schield Wood Products, L.L.C. Except as expressly admitted, Defendants otherwise deny each and every allegation in paragraph 7.

8.      Defendants admit that Darren Schield, as the sole managing member of Schield Wood Products, L.L.C., authorized and executed all actions of Schield Wood Products, L.L.C. Defendants further state that Noi Schield was unaware of any of the actions of Schield Wood Products, L.L.C., and took no action to facilitate any of the transactions alleged in the FAC. Defendants aver that Schield Wood Products, L.L.C. never had any operations or bank accounts and that the sole purpose of Schield Wood

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT
WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

Products, L.L.C. was to hold collateral for the benefit of the lender, L.A. Sports Properties, Inc., Darren Schield's employer at the time such collateral was tendered by the borrower, Coeur d'Alene Wood, L.L.C. ("C.D.A. Wood"). Defendants further aver that such collateral was the only assets ever held by Schield Wood Products, L.L.C. and that Schield Wood Products, L.L.C. never received or distributed any cash or other property as a result of holding such assets. Defendants further aver that Darren Schield tendered, unconditionally, all of such collateral held by Schield Wood Products, L.L.C. for the benefit of L.A. Sports Properties, L.L.C., and that L.A. Sports Properties, L.L.C. refused such tender, apparently so that it could press forward with this action to seek an injunction to achieve the very same turnover that was already unconditionally tendered and to enhance the prospects of recovering its attorneys' fees and costs. Defendants admit that when the collateral was initially received by Schield Wood Products, L.L.C., Darren Schield and Noi Schield resided at 1682 Sycamore Canyon Drive, Westlake Village, California 91361; and that since moving in 2023, Darren and Noi Schield have resided at 1308 E. Bruin Loop, Hayden, Idaho 93835. Except as expressly admitted, Defendants deny each and every allegation in paragraph 8. Except as expressly admitted, the allegations in paragraph 8 constitute a misleading and inaccurate description of relevant facts, and Defendants deny the allegations on that basis.

9.    Defendants admit that Darren Schield is the only managing member of Schield Wood Products, L.L.C., and that it has never had any employees or officers. Except as expressly admitted, Defendants deny each and every allegation in paragraph 9.

10.    Defendants admit that Darren Schield, as the sole managing member of Schield Wood Products, L.L.C., authorized and executed all actions of Schield Wood Products, L.L.C. Defendants aver that Schield Wood Products, L.L.C. never had any operations or bank accounts and that the sole purpose of Schield Wood Products, L.L.C. was to hold collateral for the benefit of the lender, L.A. Sports Properties, Inc. L.A. Sports Properties, L.L.C. employed Darren Schield as its Chief Financial Officer at the time the borrower, C.D.A. Wood, tendered such collateral. Defendants further aver that such

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT
WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

collateral was the only assets ever held by Schield Wood Products, L.L.C. and that Schield Wood Products, L.L.C. never received or distributed any cash or other property as a result of holding such assets. Defendants further aver that Darren Schield tendered, unconditionally, all of such collateral held by Schield Wood Products, L.L.C. for the benefit of L.A. Sports Properties, L.L.C., and that L.A. Sports Properties, L.L.C. refused such tender, apparently so that it could press forward with this FAC to seek an injunction seeking to achieve the very same turnover that was already unconditionally tendered and to support a claim for attorneys' fees and costs incurred to do so. Except as expressly admitted, Defendants deny each and every allegation in paragraph 10.

11.    Defendants deny each and every allegation in paragraph 11.

12.    Defendants deny each and every allegation in paragraph 12.

13.    Defendants admit that Darren Schield began work in 1994 for Beverly Hills Properties, a dba for Donald & Rochelle ("Shelly") Sterling. Defendants further aver that Beverly Hills Properties, L.L.C. was formed in 2014 after controversial comments made by Donald Sterling, the Los Angeles Clippers' owner, audiotaped by his mistress, went public and viral, causing the N.B.A. immediately to bar him for life from owning an N.B.A. team. Thereafter, the Clippers were sold to Steve Balmer for $2 billion. Donald Sterling was adamantly against the sale, but Shelly Sterling took control over the Sterling Family Trust, the owner of L.A. Sports, against Donald's will, and executed the sale of the Clippers. As a consequence, Donald and Shelly Sterling were extremely hostile toward one another thereafter. When the funds from the sale arrived, Shelly Sterling, who had no knowledge or ability to manage such funds, but aggressively sought to keep the funds out of Donald's control, imposed the burden of investing such a massive cash infusion onto Darren Schield, in addition to all of his other Chief Financial Officer duties for the Sterlings and their affiliates, including L.A. Sports Properties, Inc., Beverly Hills Properties, L.L.C., and the Sterling Family Trust. Shelly sued Donald's mistress to recover the substantial undisclosed gifts that Donald had made to his mistress without Shelly's consent. Shelly Sterling did not want Donald Sterling to use Beverly Hills Properties to

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT
WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

gain control over the bank account and the staff working at Beverly Hills Properties. L.A.
Sports Properties, Inc. never managed real estate. It was formed to own the L.A. Clippers
basketball club. When that was sold, L.A. Sports' purpose was then to pay and receive
taxes until the business operations were complete. After all taxes were filed and refunds
received, Shelly Sterling wanted to keep the account open as an account separate and
away from her husband, Donald Sterling. She was always on the lookout for opportunities
to find and keep funds away from Donald. Defendants admit that Schield received
compensation for his work with the Sterlings and their affiliates, and that his
compensation was substantially less than the compensation paid to Chief Financial
Officers of businesses of similar size and complexity. Defendants aver that Shelly Sterling
wrongfully terminated Darren Schield on or around June 30, 2023. Except as expressly
admitted, Defendants deny each and every allegation in paragraph 13.

A.    **Defendants Deny Each and Every Allegation in Heading A
to the FAC**

14.    Defendants admit that L.A. Sports Properties, Inc. entered into an agreement
with Ophde Advisors, L.L.C. ("Ophde") on or about June 29, 2018. Except as expressly
admitted, Defendants deny each and every allegation in paragraph 14.

15.    Defendants admit that David Gilbertson introduced Darren Schield to Julian
Samuels. Defendants lack sufficient information and belief as to whether, and the extent
to which, David Gilbertson received compensation from Ophde as a result of such
transaction, and on that basis, deny such allegations. Except as expressly admitted,
Defendants deny each and every allegation in paragraph 15.

16.    Defendants admit that the Ophde Agreement speaks for itself and is the best
evidence of its contents, and they deny the allegations to the extent they are inconsistent
with such terms or incomplete or taken out of context. Defendants further admit that
Darren Schield caused L.A. Sports to hold back the second installment required by that
Ophde Agreement in the amount of $750,000 in order to mitigate against the risk of such
investment for the benefit of L.A. Sports. Defendants lack sufficient information and

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT
WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

belief to assess the actual losses suffered by L.A. Sports as a result of the Ophde investment and, on that basis, deny such allegations. Except as expressly admitted, Defendants deny each and every allegation in paragraph 16.

17.    Defendants admit that Ophde claimed that $608,000 was misappropriated from Ophde's accounts, and that Darren Schield promptly engaged Sheppard Mullin on behalf of L.A. Sports to investigate and pursue the matter on behalf of L.A. Sports in an effort to recover those funds. Except as expressly admitted, Defendants lack sufficient information or belief as to the allegations in paragraph 17 and on that basis, deny such allegations.

18.    Defendants deny each and every allegation in paragraph 18.

19.    Defendants lack sufficient information and belief to admit any portion of paragraph 19 and, on that basis, deny each and every allegation contained therein.

**B.    Defendants Deny the Allegations Contained in Heading B of the FAC**

20.    Defendants deny that David Gilbertson was Schield's close friend at any time. Defendants admit that David Gilbertson arranged for a meeting between Schield and Chris Bartimioli, the principal of CDA Wood, LLC ("CDA Wood") in or around 2019. Defendants admit that CDA Wood was in search of cash to provide liquidity for its operations. Except as expressly admitted or denied, Defendants lack sufficient information and belief to admit any portion of paragraph 20 and on that basis, deny each and every allegation contained therein.

21.    Defendants admit that on or around April 2, 2019, Schield, on behalf of L.A. Sports, signed a loan agreement with CDA Wood, pursuant to which L.A. Sports loaned CDA Wood $2.6 million pursuant to the terms of written loan documents, the terms of which speak for themselves. Except as expressly admitted, Defendants lack sufficient information and belief to admit any portion of paragraph 21 and on that basis, deny each and every allegation contained therein.

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

22.     Defendants admit that on or around April 11, 2019, Darren Schield caused to be filed articles of organization with the Nevada Secretary of State for Schield Wood Products, LLC. Except as expressly admitted, Defendants deny each and every allegation in paragraph 22.

23.     Defendants admit that Darren Schield, on behalf of L.A. Sports, on the one hand, and Christopher Bartimioli, on the other hand, entered into a loan agreement dated April 2, 2019, pursuant to which L.A. Sports loaned $89,000 to Mr. Bartimioli, and that the terms of that loan agreement speak for themselves. Defendants are informed and believe and, based thereon, allege that Mr. Bartimioli has made timely payments on such loan pursuant to the terms of that written loan agreement. Except as expressly stated in that loan agreement, Defendants deny each and every allegation in paragraph 23.

24.     Defendants admit that Schield Wood Products, LLC received and held a 17.5% interest in CDA Wood and a 14.17% interest in SSB Licensing, LLC, as collateral for the benefit of Darren Schield's employer, L.A. Sports, in connection with L.A. Sports' loan to CDA Wood. Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 24.

25.     Defendants lack sufficient information to admit or deny the allegations in paragraph 25 and on that basis deny each and every allegation contained therein.

26.     Defendants admit that Darren Schield, on behalf of L.A. Sports, on the one hand, and C.D.A. Wood, on the other hand, entered into a second loan agreement in or around December 2020, pursuant to which L.A. Sports loaned C.D.A. Wood $550,000, pursuant to the terms of amended written loan agreements. Defendants aver that such loan agreements speak for themselves, and are the best evidence of their contents, and they deny the allegations to the extent they are inconsistent or, incomplete or taken out of context. Defendants further aver that this second loan was reasonable and necessary because it was made at a time when C.D.A. Wood needed cash to survive the cash shortfalls generated temporarily during the Covid crisis, which became necessary to maximize the potential for recovery from C.D.A. Wood of the pre-existing loan of $2.6

million. Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 26.

27.    Defendants admit that C.D.A. Wood paid a portion of its debts and that the parties settled the remainder of its debts pursuant to the terms of a written settlement agreement. Defendants admit that Bartimioli's personal loan of $89,000 remains outstanding and that Bartimioli has made payments on that loan. Except as expressly admitted herein, Defendants otherwise deny each and every allegation contained in paragraph 27.

28.    Defendants deny each and every allegation contained in paragraph 28.

29.    Defendants admit that on March 27, 2023, L.A. Sports and CDA Wood entered into payoff settlement agreements with CDA Wood. Defendants admit that the terms of the payoff settlement agreement referenced in paragraph 29 of the FAC speak for themselves and are the best evidence of their contents. Defendants deny the allegations to the extent they are inconsistent or incomplete or taken out of context. Defendants aver that L.A. Sports agreed to release a portion of its debt in exchange for a substantial cash payment of a substantial portion of such debt made possible by a third-party loan to CDA Wood that would not have been possible but for such release; and that, as part of that settlement, L.A. Sports was required to return its collateral, including the collateral held by Schield Wood Products, LLC for L.A. Sports' benefit. Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 29.

30.    Defendants deny the allegations in paragraph 30.

**C.    Defendants Deny the Allegations in Heading C of the FAC**

31.    Defendants admit that the Trust invested approximately $300,000,000 with a private equity firm named Banner Ridge, which invested such funds in various private equity investments, each of which has generated impressive returns on investment. Defendants further aver that Shelly Sterling, as Trustee approved prior to making that investment, and directed Darren Schield to execute on behalf of the Trust, as he and many others working for the Trust entities had done countless times in the past course of dealing

with Shelly and Donald Sterling for the benefit of the Trust and related entities. Defendants further aver that the allegation of forgery is misleading and inapplicable here, where the signature was authorized, was a matter of the ordinary course of dealing with Darren Schield and others working for Shelly and Donald Sterling (both in their late 80s), and that the transfer of $300,000,000 was not made from the Trust to Darren Schield, but instead was made from a Trust account to another Trust account in which Shelly Sterling, as Trustee (not Darren Schield), had sole power and control. Defendants further aver that while the investments in question would have been very profitable to Shelly Sterling had she not prematurely attempted to exit them, and would have accomplished one of Shelly Sterling's stated goals of keeping the funds out of the hands of Donald Sterling so that he could not gift them away to his mistresses or otherwise squander them, Shelly Sterling made a demonstrably bad decision contrary to the advice of her investment advisers to enter into an agreement with Banner Ridge to secure $180,000,000 in cash, in exchange for giving up her profits and more, all after firing Darren Schield. Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 31.

32.     Defendants admit that Banner Ridge waived its minimum capital requirements as to Schield, and that Schield invested $150,000 of his own money in the same investments made by Shelly Sterling, on behalf of the Trust, and maintains those investments today. Defendants aver that Schield's decision to invest his own money in these investments reflects that he believed, in good faith, that such investments were sound and in the best interests of the Trust, when those investments were made. Except as expressly admitted herein, Defendants deny each and every allegation contained in paragraph 32.

33.     Defendants deny each and every allegation contained in paragraph 33.

**D.     Defendants Deny the Allegations in the Heading at D in the FAC**

34.     Defendants admit that Schield caused L.A. Sports to enter into certain investments in Clavo 1 and Cypress in Costa Rica. Defendants deny that Schield made personal investments in Clavo 1 and/or Cypress in Costa Rica. Except as expressly

admitted, Defendants lack sufficient information to admit or deny the remaining allegations in paragraph 34 and, on that basis, deny each and every other allegation set forth in paragraph 34.

35.    Defendants admit that on or around May 12, 2018, in his personal capacity, Schield entered into a joint venture agreement and promissory note with Atromitos S.A. ("Atromitos") and that Schield personally invested $300,000 in Atromitos, and that the terms of those agreements speak for themselves and are the best evidence of its contents, and they deny the allegations to the extent they are inconsistent or incomplete or taken out of context. Except as expressly admitted herein, Defendants lack sufficient information and belief to admit or deny such allegations, and, on that basis, deny each and every allegation contained in paragraph 35.

36.    Defendants further admit that Schield also caused L.A. Sports to invest $150,000  into Cypress and, $250,000 into Clavo 1, and $75,000 into NBI Blueprints, Ltd. on or around the same time in the Fall of 2018, and that written agreements executed in connection with such agreements speak for themselves and are the best evidence of their contents. Defendants deny the allegations to the extent they are inconsistent or incomplete or taken out of context. Except as expressly admitted, Defendants lack sufficient information and belief to admit or deny the allegations contained in paragraph 36 and on that basis, deny each and every such allegation.

37.    Defendants admit that on or around November 10, 2018, Schield signed a term sheet with Atromitos, the Global Sustainability Initiative, and Blueprints, in his individual capacity, and that written agreements executed in connection with such agreements speak for themselves and are the best evidence of their contents. Defendants deny the allegations to the extent they are inconsistent or incomplete or taken out of context. Except as expressly admitted, Defendants lack sufficient information and belief to admit or deny the allegations contained in paragraph 37 and on that basis deny each and every such allegations.

38.    Defendants admit that it was clear to L.A. Sports on or before September 6, 2019 that it had lost all of its $150,000 investment into Cypress. Except as expressly admitted, Defendants lack sufficient information and belief to admit the allegations contained in paragraph 38, and on that basis deny each and every allegation contained therein.

39.    Defendants admit that L.A. Sports' investments into the Costa Rican forestry and farm projects resulted in a loss to L.A. Sports which loss was known to L.A. Sports on or before September 6, 2019. Except as expressly admitted, Defendants lack sufficient information and belief to admit or deny the allegations contained in paragraph 39 and on that basis deny each and every such allegations.

**E.    Defendants Deny the Allegations in the Heading at E in the FAC**

40.    Defendants admit that Shelly Sterling wrongfully terminated Schield's employment by L.A. Sports, the Sterlings, and the Trust, among other entities, after 30 years of loyal and beneficial service. Except as otherwise admitted, Defendants deny each and every allegation in paragraph 40.

41.    Defendants deny each and every allegation in paragraph 41.

## FIRST CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES
### (Against Darren Schield)

42.    Defendants hereby incorporate their responses to paragraphs 1-31, inclusive, by this reference as if fully stated herein.

43.    Defendants admit that L.A. Sports, the Sterlings, the Trust and related entities employed Darren Schield as their Chief Financial Officer from 1994 (or inception, to the extent it was created later) until June 30, 2023, when he was wrongfully terminated by Shelly Sterling, the controlling person for all such entities at that time. Defendants further admit that Darren Schield owed legal duties commensurate with the authority that L.A. Sports, the Trust and the Sterlings entrusted to him over his 30-year career, including the authority to enter into the transactions and make the investment decisions alleged in the FAC. Defendants further aver that Darren Schield, at all relevant times, made such

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

decisions in good faith and that such decisions were made with the intent to make a profit for L.A. Sports, the Trust and/or the Sterling affiliates, as applicable, and were reasonable under the circumstances when they were made. Defendants further aver that none of the Defendants personally profited from any such decisions. Except as expressly admitted herein, the Defendants otherwise deny each and every allegation contained in paragraph 43.

44.    Defendants admit that in 2018, Darren Schield personally invested $300,000 into Atromitos, and in the same year caused L.A. Sports to invest $400,000 into Atromitos and $75,000 in NBI Blueprints. Except as expressly admitted herein, Defendants deny each and every allegation contained in paragraph 44.

45.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 45.

46.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 46.

47.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 47.

48.     Except as admitted above, Defendants deny each and every allegation contained in paragraph 48.

49.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 49.

50.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 50.

51.    Defendants deny each and every allegation contained in paragraph 50.

## SECOND CAUSE OF ACTION – FRAUD

### (Against All Defendants)

52.    Defendants hereby incorporate their responses to paragraphs 1-51, inclusive, by this reference as if fully stated herein.

53.    Defendants admit that L.A. Sports, the Sterlings, the Trust and their affiliates employed Darren Schield as its Chief Financial Officer from 1994 (or inception, to the extent it was created later) until June 30, 2023, when he was wrongfully terminated by Shelly Sterling, the controlling person of all such entities. Defendants further admit that Darren Schield owed legal duties commensurate with the authority entrusted to him by L.A. Sports, the Trust and the Sterlings over the course of his 30-year career, including the authority to enter into the transactions and make the investment decisions alleged in the FAC. Defendants further aver that Darren Schield, at all relevant times, made such decisions in good faith and that such decisions were made with the intent to make a profit for L.A. Sports and/or the Sterling affiliates, as applicable, and were reasonable under the circumstances when they were made. Defendants further aver that none of the Defendants personally profited from any such decisions. Except as expressly admitted herein, the Defendants otherwise deny each and every allegation contained in paragraph 53.

54.    Defendants admit that on or around April 11, 2019, Darren Schield caused to be filed articles of organization with the Nevada Secretary of State for Schield Wood Products, LLC. Defendants admit that Schield Wood Products, LLC received and held a 17.5% interest in CDA Wood and a 14.17% interest in SSB Licensing, LLC, as collateral for the benefit of Darren Schield's employer, L.A. Sports, in connection with L.A. Sports' loan to CDA Wood. Except as expressly admitted, Defendants deny each and every allegation contained in paragraph 54.

55.    Except as admitted above, Defendants deny each and every allegation contained in paragraph 55.

56.    Defendants admit that Banner Ridge waived its minimum capital requirements as to Schield, and that Schield invested his own money in the same investments made by the Trust, and maintains those investments today. Defendants aver that Schield's decision to invest his own money in these investments reflects that he believed, in good faith, that such investments were sound and in the best interests of the

Trust, when those investments were made. Except as expressly admitted herein,
Defendants deny each and every allegation contained in paragraph 56.

57.     Defendants admit that Schield invested in Monomoy, Throfare, siguler Guff,
alongside the Trust's much larger investment. Defendants further aver that every
investment has generated a substantial internal rate of return and that Schield believes, to
this day, that had Shelly Sterling not sought a premature cash out of the Trust's
investments, she too would have reaped substantial profits from such investments. Except
as admitted above, Defendants deny each and every allegation contained in paragraph 57.

58.     Except as admitted above, Defendants deny each and every allegation
contained in paragraph 58.

59.     Except as admitted above, Defendants deny each and every allegation
contained in paragraph 59.

### THIRD CAUSE OF ACTION – AIDING AND ABETTING FRAUD

### (Against All Noi Schield and Schield Wood Products)

60.     Defendants hereby incorporate their responses to paragraphs 1-59, inclusive,
by this reference as if fully stated herein.

61.     Defendants deny each and every allegation in paragraph 61.

62.     Defendants deny each and every allegation in paragraph 62.

### FOURTH CAUSE OF ACTION – AIDING AND ABETTING BREACH OF
### FIDUCIARY DUTY

### (Against Noi Schield and Schield Wood Products)

63.     Defendants hereby incorporate their responses to paragraphs 1-62, inclusive,
by this reference as if fully stated herein.

64.     Except as admitted above, Defendants deny each and every allegation in
paragraph 64.

65.     Defendants deny each and every allegation in paragraph 65.

66.     Defendants deny each and every allegation in paragraph 66.

## FIFTH CAUSE OF ACTION – VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Against All Defendants)

67.     Defendants hereby incorporate their responses to paragraphs 1-66, inclusive, by this reference as if fully stated herein.

68.     Paragraph 68 purports to make a statement of law, which requires no response. To the extent a response is owed, Defendants deny that such statement includes a complete and accurate statement of the law cited in paragraph 68.

69.     Defendants admit that L.A. Sports, the Trust, the Sterlings and their affiliates employed Darren Schield as its Chief Financial Officer from 1994 (or inception, to the extent it was created later) until June 30, 2023, when he was wrongfully terminated by Shelly Sterling, the person in control of all such entities at that time. Defendants further admit that Darren Schield owed legal duties commensurate with the authority entrusted to him by L.A. Sports, the Trust, the Sterlings and their affiliates over his 30-year career, including the authority to enter into the transactions and make the investment decisions alleged in the FAC. Defendants further aver that Darren Schield, at all relevant times, made such decisions in good faith and that such decisions were made with the intent to make a profit for L.A. Sports, the Trust, the Sterling and their affiliates, as applicable, and were reasonable under the circumstances when they were made. Except as expressly admitted, Defendants otherwise deny each and every allegation in paragraph 69.

70.     Defendants deny each and every allegation in paragraph 70.

71.     Defendants deny each and every allegation in paragraph 71.

WHEREFORE, Defendant asks this Court to deny Plaintiff the relief requested herein against it and to enter a judgment of no cause of action in Defendant's favor and award Defendant its attorney's fees and costs incurred in having to defend this action.

//

//

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

# AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses and reserve the right to amend this Answer to assert any additional affirmative defenses when and if, in the course of its investigation, discovery, or preparation for trial it becomes appropriate to assert such affirmative defenses. In asserting these defenses, Defendants do not assume the burden of proof for any issue that would otherwise rest on the Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

### *Failure to State a Claim*

Defendants allege, with respect to each cause of action and claim for relief, that such causes of action and claims for relief, and each of them, are barred because the FAC fails to state facts sufficient to establish such cause of action or claim for relief. Plaintiff further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Defendants.

## SECOND AFFIRMATIVE DEFENSE

### *Statute of Limitations Bars Second and Third Claims For Relief Based on Fraud*

Plaintiffs' second and third claims for relief based on fraud are barred by the applicable statutes of limitations, including, without limitation, the three-year statute of limitations imposed by California Code of Civil Procedure 338(d). L.A. Sports and the Trust had actual and constructive notice of such transactions at the time they were executed and contemporaneously booked onto the books and records of that entity. Shelly Sterling had actual and constructive knowledge of the same transaction at the same time that the transaction was executed and contemporaneously booked onto the books and records of L.A. Sports and the Sterling Family Trust, because, at that time, she was the chief executive and owner of L.A. Sports and the Trustee of the Sterling Family Trust. Moreover, Shelly Sterling confirmed actual knowledge of the losses arising from this transaction no later than the date that they reviewed, signed, and filed their personal tax returns reflecting such losses, at which time Darren Schield reviewed their tax returns with them and expressly discussed such transactions and the resulting losses.

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

Shelly Sterling was, at all relevant times, the chief executive officer of L.A. Sports Properties, Inc. and Trustee of the Sterling Family Trust, and had actual and constructive knowledge of each transaction as it was executed. At all times, the Sterlings had full access to the books and records of L.A. Sports Properties, Inc., the Trust, and all the Sterlings' affiliated entities, and to Darren Schield and could have and did know about such transactions and ask questions directly to Darren Schield if and to the extent that they had any questions or concerns about them. Accordingly, such claims are time-barred.

## THIRD AFFIRMATIVE DEFENSE

### *Statute of Limitations Bars First and Fourth Claims For Relief based on Breach of Fiduciary Duty*

Plaintiffs' first and fourth claims for relief based on breach of fiduciary duty are barred by the applicable statutes of limitations, including, without limitation, the four-year statute of limitations imposed by California Code of Civil Procedure 343. L.A. Sports and the Trust had actual and constructive notice of such transactions at the time they were executed and contemporaneously booked onto the books and records of that entity. Shelly Sterling had actual and constructive knowledge of the same transaction at the same time that the transaction was executed and contemporaneously booked onto the books and records of L.A. Sports and the Sterling Family Trust, because, at that time, she was the chief executive and owner of L.A. Sports and the Trustee of the Sterling Family Trust. Moreover, Shelly Sterling confirmed actual knowledge of the losses arising from this transaction no later than the date that they reviewed, signed, and filed their personal tax returns reflecting such losses, at which time Darren Schield reviewed their tax returns with them and expressly discussed such transactions and the resulting losses. Shelly Sterling was, at all relevant times, the chief executive officer of L.A. Sports Properties, Inc. and Trustee of the Sterling Family Trust, and had actual and constructive knowledge of each transaction as it was executed. At all times, the Sterlings had full access to the books and records of L.A. Sports Properties, Inc., the Trust, and all the Sterlings' affiliated entities, and to Darren Schield and could have and did know about

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

such transactions and ask questions directly to Darren Schield if and to the extent that they had any questions or concerns about them. Accordingly, such claims are time-barred.

## FOURTH AFFIRMATIVE DEFENSE

### *The Doctrine of Laches Bars Fifth Claims for Relief For Equitable Relief*

Plaintiffs' fifth claim for equitable relief is barred by the doctrine of laches. Plaintiffs waited nearly six years after the transactions about which the FAC complains before bringing their claims for equitable relief to the Court. While Plaintiffs falsely alleges that Plaintiffs did not know about such transactions, Plaintiffs, themselves, were the parties to each transaction. L.A. Sports and the Trust had actual and constructive notice of such transactions at the time they were executed and contemporaneously booked onto the books and records of that entity. Shelly Sterling had actual and constructive knowledge of the same transaction at the same time that the transaction was executed and contemporaneously booked onto the books and records of L.A. Sports and the Sterling Family Trust, because, at that time, she was the chief executive and owner of L.A. Sports and the Trustee of the Sterling Family Trust. Moreover, Shelly Sterling confirmed actual knowledge of the losses arising from this transaction no later than the date that she reviewed, signed and filed their personal tax returns reflecting such losses, at which time Darren Schield reviewed her and Donald Sterling's tax returns with them and expressly discussed such transactions and the resulting losses. At all times, Plaintiffs had full access to the books and records of L.A. Sports Properties, Inc., the Sterling Family Trust and Darren Schield and could have and did know about such transactions and ask questions directly to Darren Schield if and to the extent that they had any questions or concerns about them. As a result of Plaintiffs' lengthy delay before filing its claim, the Defendants have suffered irreparable harm, including lost documents and faded memories. Accordingly, such claims are barred by the doctrine of laches. The Defendants would suffer substantial prejudice, in terms of lost documents, lost memories, and lost perspective of the Court, should they be allowed to proceed on the stale claims asserted in

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

the FAC in the Fifth claims for relief. Accordingly, such claims are time-barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

### *Equitable Estoppel as to All Claims for Relief*

Plaintiffs' claims for relief, and all of them, are barred by the doctrines of waiver or estoppel. Any damages which Plaintiff may have suffered, which Defendants continue to deny, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages. Plaintiffs are estopped from pursuing claims against its own chief financial officer because the owner and chief executive officer of Plaintiff L.A. Sports and Trustee of the Sterling Family Trust, Donald and Shelly Sterling, explicitly and implicitly authorized, consented to, and ratified the investment decisions of Darren Schield. Accordingly, such claims are barred by the doctrines of waiver or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### *Business Judgment Rule as to All Claims for Relief*

All of the plaintiffs' claims for relief are barred by the business judgment rule. Defendants acted with good faith and exercised reasonable business judgment. Plaintiffs have cherry-picked a few relatively immaterial investments made in an investment portfolio of billions of dollars and seek to hold the Defendants responsible for any and all losses on the cherry-picked investment decisions. Defendants, however, made those decisions in good faith by relying on the corporate decision-making process at L.A. Sports without any self-interest affecting such decisions. Each decision that was made by Darren Schield, at the time it was made, was made in good faith, was objectively reasonable at the time it was made, and was made after meeting the standard of care warranted by the nominal support the Sterlings were willing to provide to Darren Schield, and the amount of each relatively nominal investment in relation to the multi-billion real estate empire and investment portfolio with which Darren Schield was charged with managing for the Sterlings and their affiliates, including L.A. Sports Properties, Inc. Taken in the context of

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

the successful real estate operations and the many successful investment decisions that Darren Schield made and influenced over the course of his thirty-year tenure with the Sterlings and their affiliates, including L.A. Sports and the Sterling Family Trust, these few and relatively immaterial losses are dwarfed by the profits made for the Sterlings and L.A. Sports on the real estate operations and other investment guidance and decisions made by Darren Schield on their behalf. Accordingly, the business judgment rule bars all claims asserted by the Plaintiff in the FAC.

## SEVENTH AFFIRMATIVE DEFENSE

### *Good Faith And Reasonable Diligence as to All Claims for Relief*

Plaintiffs' claims for relief, and all of them, are barred because, with respect to each investment decision at issue in this case, Darren Schield acted in good faith after reasonable diligence. Plaintiffs have cherry-picked a few relatively immaterial investments made in an investment portfolio of many billions of dollars and seeks to hold the Defendants responsible for any and all losses on the cherry-picked investment decisions. Defendants, however, allege that each decision that was made by Darren Schield, at the time it was made, was made in good faith, was objectively reasonable at the time it was made, and was made after meeting the standard of care warranted by the nominal support the Sterlings were willing to provide to Darren Schield, and the amount of each relatively nominal investment in relation to the multi-billion real estate empire and investment portfolio with respect to which Darren Schield was charged with managing for the Sterlings and their affiliates, including L.A. Sports Properties, Inc. and the Trust. Taken in the context of the successful real estate operations and the many investment decisions that Darren Schield made and influenced over the course of his thirty-year tenure with the Sterlings and their affiliates, including L.A. Sports and the Trust, these few and relatively immaterial losses are dwarfed by the profits made for the Sterlings, L.A. Sports and the Trust on the real estate operations and other investment guidance and decisions made by Darren Schield on their behalf. Accordingly, all of Plaintiffs' claims are barred.

## EIGHTH AFFIRMATIVE DEFENSE

### *Statute of Frauds – Contract to Answer for the Debt of Another*

Plaintiffs' claims for relief, and all of them, seek, in one way or another, to hold the Defendants liable for the debts of another (entities into which sums of money were invested and lost). Such claims are barred by California Civil Code Section 1624 based on the statute of frauds. Defendants cannot be held liable to answer for the debts of C.D.A. Wood, Ophde or any other person owing debts to L.A. Sports, because there is no written contract, signed by any of the Defendants, agreeing to guarantee the repayment of such investments.

## NINETH AFFIRMATIVE DEFENSE

### *Failure to Mitigate Damages*

Plaintiffs' claims for relief, and all of them, should be barred because Plaintiffs failed to act reasonably to mitigate their damages on a timely basis. Plaintiffs did, or should have, with reasonable diligence, discovered that the investments alleged in the FAC were being considered and thereafter made. Had Plaintiffs acted in a timely manner, they could have prevented entirely or substantially all losses suffered by the alleged investments. Plaintiffs are not permitted to sit idly by for six years, enjoy the profits of the profitable decisions made by Darren Schield, and sue Darren Schield, his wife, and his company to recover for any unprofitable decisions that were made. Moreover, Plaintiffs took affirmative actions to sell their Banner Ridge investments at a substantial loss, which would have been completely avoided, had Shelly Sterling, acting for the Trust, simply allowed the investments to mature and draw her investments out, with substantial profits, after maturity. Instead, so that she could draw $180 million out of the Trust's investment funds, with the goal of hiding those funds from her husband, who had had a very public propensity to give lavish gifts to his mistresses, Shelly Sterling, acting for the Trust, knowingly forfeited a substantial portion of her Banner Ridge investments, including an internal rate of return on those investments of approximately 11% per annum. Such

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

decision was patently unwise, and was done against the advice of many, if not all, of her investment advisers.

## TENTH AFFIRMATIVE DEFENSE

### *Setoff*

Plaintiffs' claims for relief, and all of them, should be barred because Darren Schield's profitable decisions should be set off against Darren Schield's unprofitable decisions, which far outpace the unprofitable decisions. For the past 30 years, prior to his wrongful termination on June 30, 2023, Darren Schield has made countless decisions for the Sterlings and their affiliated entities, including L.A. Sports Properties, Inc., Beverly Hills Properties, and the Sterling Family Trust. If Darren Schield is to be held liable for the relatively few and minor decisions at issue in this case, he should be allowed by the Court to set off against the losses on those investments all the profits made in the business operations and investment portfolios managed by Darren Schield. If that were the case, such setoffs would erase any such losses.

## ELEVENTH AFFIRMATIVE DEFENSE

### *Contributory Negligence of Others*

Plaintiffs are barred from any remedy against Defendants because Plaintiffs' damages, if any, were caused in whole or in part by the acts and/or omissions of Plaintiffs or their agents, Shelly and Donald Sterling, or other third parties' own acts, whose conduct Defendants had no reason to anticipate and for whose conduct Defendants are not responsible. Plaintiffs' claims for damages should be reduced by the amount of such damages that were caused by the acts or omissions of others, including, without limitation, Donald and Shelly Sterling and wealth managers hired by the Sterlings to manage their wealth. Accordingly, the liability of the Defendants, if any,  and responsible parties, named or unnamed, should be apportioned according to their respective degrees of fault or other legal responsibility, and the liability, if any, of these Defendants should be reduced accordingly.

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

## TWELFTH AFFIRMATIVE DEFENSE

### *Failure to Mitigate – Refusal to Accept Unconditional Tender of Collateral*

Plaintiffs' claims based on Defendants' alleged failure to deliver to L.A. Sports the collateral received on the C.D.A. Wood loan is barred because the Defendants formally and unconditionally tendered to L.A. Sports, through counsel, all of such collateral in Schield Wood Products, L.L.C.'s possession, custody, or control before this Answer was filed. In addition, previous to such tender, Schield Wood Products, L.L.C., at all relevant times, held such collateral for the benefit of L.A. Sports and continues to do so. The Defendants continue hereby to offer to deliver such collateral to L.A. Sports if and when L.A. Sports indicates its willingness to accept such collateral.

## THIRTEENTH AFFIRMATIVE DEFENSE

### *No Knowledge or Control*

Plaintiffs' claims against Noi Schield are barred because Noi Schield never had any knowledge about or control over the transactions at issue in this case.

## FOURTEENTH AFFIRMATIVE DEFENSE

### *Intervening Superseding Cause*

Plaintiffs' claims against the Defendants are barred because there were intervening superseding causes, including the Covid-19 pandemic, acts or omissions of third persons over which or whom Defendants had neither control nor responsibility that caused the Plaintiffs' damages, if any, and the Defendants acted reasonably to mitigate those damages under the circumstances.

## FIFTEENTH AFFIRMATIVE DEFENSE

### *Force Majeure*

Plaintiffs' claims against the Defendants are barred because an act of God, a force majeure, the COVID-19 pandemic, caused Plaintiffs' damages, and Defendants acted reasonably to mitigate such damages under the circumstances.

//

//

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

## SIXTEENTH AFFIRMATIVE DEFENSE

### *California's Unfair Competition Law Do Not Afford Plaintiff Any Relief*

Plaintiffs' claims based on California's Unfair Competition Laws under Section 17200 of the Business and Professions Code afford Plaintiff no relief under the circumstances pled in the FAC. The purpose of a public injunction under California's Unfair Competition Law (U.C.L.) is not to resolve a private dispute but to remedy a public wrong, with the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public. Here, there was no unfair competition or wrongful business practice and thus no public wrong. Moreover, because Defendants received no money or profit, held the collateral for the benefit of L.A. Sports, and tendered such collateral to the Plaintiff (and remains willing to deliver such collateral upon request), there is no public harm that would be avoided by an injunction or restitution that is not available to the Plaintiff upon its acceptance of the collateral. Plaintiffs' claims are, therefore, barred to the extent based on Section 17200 of the Business and Professions Code.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend its Answer and assert other affirmative defenses that may become apparent to Defendants during the course of factual discovery in this action.

WHEREFORE, Defendant asks this Court to deny Plaintiffs the relief requested in this action against them and to enter a judgment of no cause of action in Defendants' favor; awarding Defendants their attorney's fees and costs incurred in having to defend this action; and granting such other and further relief as the Court may deem just and proper.

Dated: August 21, 2024          **CORRIGAN & MORRIS LLP**

/s/ *Stanley C. Morris*
Stanley C. Morris

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

Attorneys for Defendants, Darren Schield, Noi Schield, and Schield Wood Products, L.L.C. and Counterclaimant, Darren Schield

## JURY TRIAL DEMANDED

     Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 38-1, Defendants Darren Schield, Noi Schield, and Schield Wood Products, L.L.C., hereby demand a jury trial on all matters and issues triable by a jury.

DATED: August 15, 2024        **CORRIGAN & MORRIS LLP**

                                      */s/ Stanley C. Morris*
                                      Stanley C. Morris
                                      Attorneys for Defendants, Darren Schield, Noi Schield, and Schield Wood Products, L.L.C. and Counterclaimant, Darren Schield

## AMENDED COUNTERCLAIMS

Counterclaimant Darren Schield counterclaims against Counter-Defendants and Plaintiffs, L.A. Sports Properties, Inc., a California corporation (hereafter "L.A. Sports"), and Rochelle ("Shelly") Sterling, as Trustee of the Sterling Family Trust, as follows:

## THE PARTIES

1.  Counterclaimant Darren Schield is an individual citizen of Idaho.

2.  Counter-Defendant, L.A. Sports, is a California corporation having its principal place of business in Los Angeles County, California.

3.  Counterclaimant is informed and believes that Counter-Defendant, Rochelle ("Shelly") Sterling, Trustee of the Sterling Family Trust, is a resident of Beverly Hills, California.

4.  Counterclaimant is informed and believes, and based thereon, alleges that Counter-Defendant has committed the acts alleged herein within this judicial district.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this action pursuant to 28 USC 1332(a)(1) based on diversity of citizenship.

6.   This Court has personal jurisdiction over the Counter-Defendants because the Counter-Defendants have continuous, systematic, and substantial presence within this judicial district, including by engaging in business and employing personnel, including the Counterclaimant, in this judicial district, and by committing acts in this judicial district, which acts form a substantial part of the events or omissions giving rise to Counterclaimant's claims.

7.   Venue is proper in this case pursuant to 28 U.S.C. §1391(b)(2).

## NATURE OF THE COUNTERCLAIMS

### A.    L.A. Sports, Donald, and Shelly Sterling Created a Hostile and Abusive Workplace

8.      Darren Schield brings this counterclaim against L.A. Sports and Shelly Sterling, Trustee of the Sterling Family Trust, to recover from Counter-Defendants for the outrageous and abusive actions by each of Donald S. Sterling and Rochelle ("Shelly") Sterling, in connection with their employment of Darren Schield as Chief Financial Officer of their personal assets, as well as the operations of their various affiliated entities and trusts, including, the Sterling Family Trust, with respect to which they each were, at various times, the trustees of that Trust. The Trust owned most of the Sterlings' assets, including L.A. Sports and Beverly Hills Properties, which operated the Sterlings' multi-billion dollar real estate empire. Such outrageous and abusive actions included threats of physical harm, screaming at him, berating him loudly in front of others in the office, threatening to fire him on the spot, and confronting him physically in his office, along with a very large and intimidating ex-convict implicitly (although unambiguously) threatening Darren Schield with extreme bodily harm if Darren Schield dared to defy Donald Sterling and/or do anything to favor his wife, Shelly Sterling. Donald Sterling made explicit demands that Darren Schield take illegal actions to restate and thereby substantially overstate the value of depreciable buildings (moving the tax basis from land to buildings on almost 200 properties) and thereby understate taxable income on their tax returns by millions of dollars per year. Darren Schield confirmed with the Sterlings' accounting firm that there was no legitimate legal authority for taking such action. Darren Schield made it clear to Donald Sterling that he would not comply with such illicit mandates. Donald screamed at Darren Schield that he would be fired if he did not comply. Shelly Sterling's role in Donald Sterling's outrageous behavior is that she would instruct the staff and officers of L.A. Sports and Beverly Hills Properties to lie to Donald Sterling about every facet of the business, from bank balances, to investments into private equity, and to distance herself from those decisions and Donald Sterling's ire by ordering employees, including Darren Schield, to sign documents on her behalf (apparently so that she could point fingers at her staff for forging those documents in the even that Donald Sterling became aware of such transactions and became irate and aggressive toward her

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

1   for directing such transaction. Shortly after Donald Sterling threatened to fire Darren

2   Schield for not committing tax evasion, Shelly wrongfully terminated Darren Schield's

3   30-year career as Chief Financial Officer for the Sterlings and their various affiliated

4   businesses, including L.A. Sports, in retaliation for his refusal to comply with such

5   demands. Separately, Donald Sterling demanded that Darren Schield, as trustee of the

6   Sterlings' children's irrevocable trusts, misappropriate funds by disbursing them to

7   Donald's private account, so that he could use those funds without detection by Shelly to

8   lavish his mistresses with expensive gifts and cash. When Darren Schield refused to do so,

9   Donald screamed at him, berated him in front of others, and threatened to fire him on the

10  spot. Donald forced Darren Schield to resign as trustee of his children's irrevocable trust.

11  At all relevant times until he was fired, and thereafter, Darren Schield fears that Donald

12  Sterling will make good on his threats of severe physical harm as a result of what he

13  believes to be disloyalty by Darren Schield. As a result of such outrageous behavior,

14  Darren Schield suffered and is suffering severe emotional distress, including severe

15  headaches, severe anxiety, loss of sleep, and loss of consortium, as well as monetary

16  damages, including lost wages, health care benefits, vacation pay, incentive bonus

17  compensation and other benefits in an amount to be determined at trial, which Darren

18  Schield projects would be in excess of $1 million. Darren Schield also seeks interest,

19  punitive damages, and any other compensatory damages that justice requires.

20      9.      As further alleged below, the principal actor in the abusive language and

21  conduct detailed herein during Darren Schield's employment was Donald Sterling. But,

22  the person who was in a legal position to put an end to Donald Sterling's abuse, and took

23  no action to do so, was his wife, Shelly Sterling, who had taken control over the Sterling

24  Family Trust, and therefore all of the assets of the Sterlings, including L.A. Sports' stock

25  and Beverly Hills Properties. She appointed herself the Chief Executive Officer and

26  President of those entities and therefore became responsible to their employees, including

27  Darren Schield, to protect them against her husband's abuse. Yet, she utterly failed to do

28  so. The person who authored the letter to Darren Schield, which wrongfully terminated

him, was Shelly Sterling, although Donald Sterling clearly pressed for such termination. L.A. Sports and Shelly Sterling, Trustee of the Sterling Family Trust, are responsible and liable to Darren Schield for not acting reasonably to protect Darren Schield from the abusive conduct of the Sterlings, for putting Darren Schield in the middle of the Sterlings' bizarre and extremely volatile marital hostilities, and for negligently retaining Donald Sterling, unchecked and unsupervised, to lord over Darren Schield in a menacingly and outrageously manner.

10.    Despite the ongoing harassment and significant pressures of the job, Darren Schield performed his job admirably, and his performance was always more than satisfactory. Indeed, Darren Schield regularly received bonuses during his tenure.

11.    As a direct and proximate result of the foregoing unlawful and malicious acts, Darren Schield has suffered and will continue to suffer extreme mental and emotional anguish. Additionally, Darren Schield has been humiliated and embarrassed as a result of the foregoing acts and omissions of the Sterlings.

## **FIRST CLAIM FOR RELIEF**

### **Intentional Infliction of Emotional Distress**

### *(Against L.A. Sports and Rochelle Sterling, Trustee of the Sterling Family Trust)*

12.    Counterclaimant Darren Schield incorporates the factual allegations contained in paragraphs 1 through 11 as though fully set forth in this paragraph.

13.    Donald Sterling, the Los Angeles billionaire who infamously was barred by the National Basketball Association ("N.B.A.") for life as owner of the N.B.A.'s Los Angeles Clippers in 2014 as a result of highly controversial statements that his mistress caught on tape and published to the media, is an outrageously abusive boss. In June 2014, after he was banned for life from the N.B.A., Shelly Sterling took control over the Sterling Family Trust, the 100% owner of L.A. Sports. Shelly Sterling immediately appointed herself Chief Executive Officer of L.A. Sports, against Donald Sterling's adamant objections, and then caused L.A. Sports to sell the Los Angeles Clippers for a record $2 billion to Microsoft executive Steve Ballmer.

14.    L.A. Sports was the entity formed by the Sterlings to own and manage the Clippers, and, after the sale of the Clippers in 2014, to manage its cash and investments. The Sterlings hired Darren Schield as L.A. Sports' Chief Financial Officer. Darren Schield worked as Chief Financial Officer of L.A. Sports until June 30, 2023, when he was wrongfully terminated by L.A. Sports, in a letter signed by Shelly Sterling.

15.    Darren Schield worked with the Sterlings at Beverly Hills Properties, a dba for the Sterlings owned by the Sterling Family Trust, for nearly 30 years, from January 1994 through June 30, 2023, principally as the Chief Financial Officer for their extremely profitable real estate operations of approximately 178 properties. On June 30, 2023, Shelly Sterling authored a letter to Darren Schield firing him from all Sterling entities, including L.A. Sports.

16.    Mr. Schield was initially hired as a senior staff accountant for Beverly Hills Properties. He was then elevated to Controller in or around 1996 and again to Chief Financial Officer around 1998. He continued in this role until his termination on June 30, 2023.

17.    Upon the formation of L.A. Sports, the Sterlings added to Mr. Schield's various financial responsibilities for other Sterling family entities, the duty to function as the Chief Financial Officer of L.A. Sports. Mr. Schield remained in that role until June 30, 2023, when he was terminated, as set forth in the letter from Shelly Sterling to Darren Schield.

18.    Donald and Shelly Sterling have an extraordinarily mercurial, bizarre, and extremely hostile marital relationship that has become the subject of public interest. The 2024 Hulu documentary on the scandal, and power struggle "Clipped" encapsulates some of these elements and more, delving into the tumultuous exit of the disgraced Donald Sterling from the Clippers basketball team.

19.    Fueling the continuous flames blazing in their relationship, Donald regularly heaped lavish gifts on his many mistresses (including houses and townhomes), infuriating Shelly, who responded by selectively filing lawsuits against the mistresses and

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

dispossessing Donald of his control over the couple's businesses, including L.A. Sports.
Throughout Darren Schield's employment by the Trust and its entities, Donald and Shelly
ruthlessly vented their anger and frustrations on their employees, particularly Darren
Schield.

20.    One example of such disputes played out in a court action between Shelly
Sterling, and Donald's mistress, Meet V. Stiviano, resulting in a judgment requiring
Stiviano to surrender a $1.8 million duplex and return $800,000 lavished on her in cash
handouts and several luxury cars, including a Ferrari, a Bentley and a Range Rover,
during their shadowy relationship. The Court of Appeal's decision in that case confirms
that "Mr. Sterling went to great lengths to conceal them from his wife." See page 2 of the
unreported decision of California Court of Appeal, Second Appellate District Division
Three, *Rochelle H. Sterling v. Stiviano*, dated July 20, 2017, Case No. B265237. Shelly
also sued Alexandra Castro, another one of Donald's mistresses, to recover residential
property on Rodeo Drive, Beverly Hills, California, that Donald had secretly gifted to Ms.
Castro from community property.

21.    In the heat of their battles, Shelly went to Court, seeking exclusive control
over the Sterlings' Family Trust, and won. In 2014, once she wrested control over the
Trust from Donald, she took control over L.A. Sports and appointed herself Chief
Executive Officer.

22.    Donald Sterling's modus operandi was to use his wealth and malicious,
oppressive, aggressive, berating tone to compel Shelly, employees, bank managers, and
even family members to fall in line with his deceitful, duplicitous, and frequently
fraudulent demands. For example, on or around June 29, 2022, Donald demanded that
Darren Schield concoct improper allocations between land and building values for the
Sterling's extensive real estate holdings in order to manufacture an additional $4 million in
depreciation. Donald insisted that his C.P.A.s look into this, but they strongly encouraged
him not to do this. In reliance on common sense advice from the C.P.A.s, Darren Schield
refused. When Darren Schield told Donald that he would not do it, Donald screamed

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

insults at Darren Schield, berated and ridiculed Darren Schield for months multiple times loudly, aggressively, and in front of Darren's coworkers, and, ultimately, had Shelly fire him in retaliation for Darren's refusal to participate in the desired tax evasion.

23.    Between 2021 and June 30, 2023, Darren Schield was constantly fighting Donald. Donald constantly threatened all his employees, including Mr. Schield, with termination. Over the decades during which Mr. Schield was employed by Beverly Hills Properties, Mr. Schield was fired several times. When that happened, Shelly kept Mr. Schield working for her, concealing such continued engagement from Donald for more than a year. Donald also had fired the company's general counsel at least three times.

24.    On or around August 4, 2014, in the heat of the couple's battle over control of the couple's Trust and its assets, including LA Sports, Donald Sterling came into the office with Jeff Dehaven, an exceptionally large and physically intimidating person. Jeff, a hulking man with an ominous presence, who stood silently with Donald implicitly (although unambiguously) threatening the entire staff of Beverly Hills Properties and demanding complete allegiance to Donald, or else! Donald insisted that any staff member who believed that Shelly was a 50% partner in this business (which she was) was to "resign immediately." When Darren Schield explained that he worked for Beverly Hills Properties and that both Donald and Shelly owned that business equally, Donald blew up at him. In the August 4, 2014 email, Deanna Paulson corroborates that Donald instructed Deanna to get Mr. Schield's keys from him. He also demanded that Deanna profess her loyalty to him, not Shelly, which she did (albeit insincerely). This bullying by Donald was persistent throughout Darren Schield's employment for L.A. Sports and Beverly Hills Properties, and the threat of physical harm remained, until Shelly Sterling fired Darren Shield on June 30, 2023, and thereafter. Donald's abuse, physical threats, and intimidation got so unbearable that Shelly was forced to have the company hire security, who sat in the company's conference room for two weeks. At that time, Donald did come in and started yelling at the security officers and then went on a tirade, complaining that Shelly had hired security.

25.     Donald and Shelly Sterling constantly lied to each other, and each would direct their employees, including Darren Schield (literally hundreds of times), Doug Walton, Gene Park, Julie Santos and most of Beverly Hills Properties' and LA Sports' employees, to lie to the other in order to conceal their attempts to move the assets of their multi-billion dollar estate away from the other spouse's control. Both were consistently seeking ways to secretly siphon funds out of the company's coffers into other accounts controlled exclusively by each of them to fund their often adversarial lifestyles of wretched excess. Darren Schield and the other Sterling Family Trust, L.A. Sports and Beverly Hills Properties employees paid the price for their constant battles over money and their deceptions. CounterClaimant is informed and believes and, based thereon alleges that one of those clandestine transactions, involved Shelly Sterling's pre-mature liquidation of the Banner Ridge investments in order to steal away with $180,000,000 in cash that she could then keep out of Donald Sterling's hands without his knowledge or consent. Doing so came at a cost to the Trust of many millions of dollars, and was made against the advice of her financial advisors. This self-inflicted damages, which she now seeks to recover from Darren Schield, unreasonably forfeited such losses in order to be able to hide from Donald Sterling the $180,000,000 in cash proceeds that Shelly was able to secure in that transaction. That forfeiture was negotiated and executed after Shelly Sterling, the Trust and LA Sports, had fired Darren Schield. Darren Schield played no role whatsoever in Shelly's unfortunate decision and is not responsible for her self-inflicted losses. Indeed, had she remained invested in the Banner Ridge investments until their maturity, the Trust would be reaping an above-market annual internal rate of return of 11%, plus 100% of the return of her investments.

26.     Around 2020 or 2021, Donald found a statement of Shelly's previously hidden (from Donald) Wells Fargo account. Darren Schield estimates that the secret Wells Fargo account had tens of millions of dollars in it at any given time. Donald was furious that she would hide money from him (even though he hid money from her all the time.) He then went on a tirade and began to increase his secret withdrawals in retribution for

Shelly's secret misappropriations of the community assets. Both did so while failing to disclose these transactions to Darren Schield.

27.    Darren Schield was the trustee of the Children's irrevocable trust. On or around 2018, Donald demanded that Darren Schield wire transfer funds to a new account he set up for himself with Richard McWhorter, a money manager. Darren Schield refused, as he was required to do by the terms of the trust. Donald ruthlessly arm-twisted, berated, and ridiculed Darren Schield for months following such refusal. Donald's abuse got so bad that Darren Schield had to resign from the Children's trust. Darren Schield was compelled to turn over the trustee role to Fidelity. Of course, that did not solve the problem. Donald maintained the full court press to compel Ben Posen, the wealth manager for the Children's irrevocable trust, and Fidelity, the designated trustee to replace Darren Schield, to distribute the assets of the Children's irrevocable trust to Donald Sterling's personal account. Ben Posen and Fidelity refused, resulting in spurious claims by Donald Sterling that Darren Schield had stolen the funds and given them away to Fidelity.

28.    In short, well after Shelly Sterling took control over the Trust, and appointed herself as the Chief Executive Officer and President of Beverly Hills Properties and L.A. Sports, up and until the date that Shelly Sterling fired Darren Schield on June 30, 2023, Donald ruled Shelly Sterling and employees of the Trust and L.A. Sports with an iron fist and demanded allegiance to him and him alone, even if it meant defying the law and violating Darren Schield's legal duties to others. Anything less than strict obedience, like treating Shelly as an equal co-owner of L.A. Sports and Beverly Hills Properties or treating Donald's children as lawful beneficiaries of an irrevocable trust, would trigger despicable screaming insults, humiliation, termination, and threats of physical assault. Darren Schield would be treated by Donald as if he had committed high treason. When an employee chooses Shelly's side (in Donald's opinion), Donald focuses his attention on seeking retribution against that employee to set an example to deter other employees from similar purported disloyal conduct.

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

29.    On June 30, 2023, Shelly terminated Darren Schield's employment as Chief Executive Officer of L.A. Sports by formal letter, in clear retaliation for Darren Schield's refusal to comply with Donald's unlawful demands that he manufacture false tax deductions by reallocating values between land and buildings on the Sterlings' 178 real estate properties. Donald's support for such termination was also motivated by his desire to retaliate against Darren Schield for refusing to invade the Sterlings' children's irrevocable trust funds to finance his lavish gift-giving to Donald's many mistresses. While the Sterlings have concocted false rationale for such termination based on failed investments related to less than .1% of the assets under Darren Schield's responsibilities, the true reason for his termination was that Donald and Shelly knew that Darren Schield would not comply with their demands to take illicit measures to understate their income and income tax liabilities, as demanded by Donald, and to steal money from the Sterlings' children's irrevocable trust, despite the outrageous screaming, berating, insulting and threatening language and conduct perpetrated on him by Donald.

30.    The oppressive improper conduct and language used by Donald and Shelly Sterling to be proven at a trial aimed at Darren Schield, including the examples detailed above and the termination on June 30, 2023, of Darren Schield, as threatened, were done in the ordinary course of business of L.A. Sports, the Trust and Beverly Hills Properties during the period covered by the statute of limitations, and clearly constitute willful, reckless, extreme and outrageous unlawful conduct.

31.    Such extreme and outrageous conduct was done with the intent to cause, or reckless disregard of, the probability of causing Darren Schield emotional distress.

32.    Such willful oppressive, extreme, and outrageous conduct actually and proximately caused Darren Schield damages, mental anguish, and extreme physical and emotional distress.

33.    L.A. Sports and Shelly Sterling, Trustee of the Sterling Family Trust, and control person of Beverly Hills Properties, at all relevant times, is vicariously liable for the tortious conduct of Donald Sterling toward their employee, Darren Schield.

34.    Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, engaged in the aforementioned unlawful acts, practices, and omissions alleged herein, and by ratifying such acts, engaged in intentional, reckless, willful, oppressive and malicious conduct, acted with willful and conscious disregard of Darren Schield's rights, welfare, and safety, and caused great physical and emotional harm to Darren Schield.

35.    By engaging in the aforementioned unlawful and improper acts, practices, and omissions, Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports intended to cause injury to Darren Schield. Donald Sterling's, Shelly Sterling's, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports' intentional and injurious conduct toward Darren Schield was reckless, malicious, and despicable and was conducted with a conscious and willful disregard of the rights and safety of others. Therefore, Darren Schield seeks an award of punitive damages sufficient to punish L.A. Sports and Shelly Sterling, Trustee of the Sterling Family Trust, and to serve as an example to deter it from similar conduct in the future.

36.    Darren Schield seeks an award against L.A. Sports and Shelly Sterling, as Trustee of the Sterling Family Trust, for compensatory and punitive damages to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### *(Against L.A. Sports and Rochelle Sterling, Trustee of the Sterling Family Trust)*

37.    Counterclaimant Darren Schield incorporates the factual allegations contained in paragraphs 1 through 36 as though fully set forth in this paragraph.

38.    The conduct and language used by Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, to be proven at a trial aimed at Darren Schield,

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

including the examples detailed above and the termination on June 30, 2023, by Shelly
Sterling, Trustee of the Sterling Family Trust, Beverly Hills Properties and L.A. Sports, of
Darren Schield, as threatened, were done in the ordinary course of business of Shelly
Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned
entities, Beverly Hills Properties and L.A. Sports L.A. Sports during the period covered
by the statute of limitations, and clearly constitute extreme and outrageous conduct.

39.    Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the
Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, as the
employers of Darren Schield, owed a duty of care to ensure that Darren Schield was not
subject to such extreme and outrageous conduct.

40.    Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the
Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports
breached that duty owed to Darren Schield by knowingly allowing such outrageous
conduct to go unchecked and unsupervised for the entirety of Darren Schield's
employment by L.A. Sports, including, in particular, the time period covered by the
statute of limitations.

41.    Such extreme and outrageous conduct actually and proximately caused
Darren Schield extreme emotional distress.

42.    As Darren Schield's employer, Shelly Sterling, as Trustee of the Sterling
Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and
L.A. Sports are vicariously liable for Donald Sterling's tortious conduct toward their
employee.

43.    Darren Schield seeks an award against L.A. Sports for compensatory and
punitive damages to be proven at trial.

### THIRD CLAIM FOR RELIEF

**Negligent Supervision and Retention**

***(Against L.A. Sports and Rochelle Sterling, Trustee of the Sterling Family Trust)***

44.    Counterclaimant Darren Schield incorporates the factual allegations contained in paragraphs 1 through 43 as though fully set forth in this paragraph.

45.    The conduct and language used by Donald Sterling to be proven at trial aimed at Darren Schield, including the examples detailed above and the termination of employment by Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports on June 30, 2023, of Darren Schield, as threatened, were done in the ordinary course of business of Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports L.A. Sports during the period covered by the statute of limitations, and clearly constitute extreme and outrageous conduct.

46.    Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, as employers of Darren Schield, owed a duty of care to ensure that Darren Schield was not subject to such extreme and outrageous conduct, including to ensure that those responsible for supervising Darren Schield, including Donald Sterling, would not engage in such conduct.

47.    Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, breached that duty owed to Darren Schield by knowingly retaining and failing to supervise Donald Sterling and thus allowing such outrageous conduct to go unchecked and unsupervised for the entirety of Darren Schield's career with Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, including, in particular, the time period covered by the statute of limitations. Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports L.A. Sports failed to take the necessary steps to prevent the harassment.

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

48.     Such extreme and outrageous conduct and omissions actually and proximately caused Darren Schield extreme mental anguish and physical and emotional distress and ultimately cost him his job and career.

49.     Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports are vicariously liable as Darren Schield's employers for Donald Sterling's injurious, tortious conduct toward Darren Schield.

50.     Darren Schield seeks an award against L.A. Sports for compensatory damages to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**Wrongful Termination in Violation of Public Policy and California Labor Code section 1102.5 (c)**

***(Against L.A. Sports and Rochelle Sterling, Trustee of the Sterling Family Trust)***

51.     Counterclaimant Darren Schield incorporates the factual allegations contained in paragraphs 1 through 50 as though fully set forth in this paragraph.

52.     The retaliatory termination of Darren Schield by Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports violated public policy and California Labor Code section 1102.5 (c) ("An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.")

53.     On or around June 29, 2022, Donald Sterling demanded that Darren Schield fraudulently concoct allocations between land and building values for the Sterling's real estate in order to manufacture an additional $4 million in depreciation as part of a tax evasion scheme. Donald insisted that his C.P.A.s look into this, but they strongly encouraged him not to do this. In reliance on the C.P.A.s, Darren Schield refused because doing so would clearly violate federal and state tax laws. When Darren Schield told

Donald that he would not do it, Donald Sterling hurled insults at Darren Schield, berated and humiliated Darren Schield for months multiple times loudly, aggressively, and in front of Darren's coworkers, and, ultimately, had Shelly fire him in retaliation.

54. Darren Schield was the trustee of the Children's irrevocable trust. On or around 2018, Donald Sterling demanded that Darren Schield wire transfer funds to a new account he set up for himself with Richard McWhorter, a money manager. Darren Schield refused to comply, as he was required to do by the terms of the trust and applicable state law requiring him to abide by the terms of the trust over which he was trustee and his duty to the beneficiaries of that irrevocable trust. Donald berated Darren Schield for months following such refusal. Donald's abuse became so unbearable that Darren Schield had to resign from the Children's trust. Darren Schield was compelled to turn over the trustee role to Fidelity.

55. In short, Donald ruled Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports with an iron fist even after Shelly took control over the Trust and its assets away from Donald in a contested legal proceeding. That Shelly took control over the Sterling Family Trust, and its assets, including the 100% ownership in Beverly Hills Properties and L.A. Sports, infuriated Donald Sterling, who thereafter demanded allegiance to him and him only, even if it meant defying applicable federal and state tax law and civil law and violating Darren Schield's legal duties to others.

56. On June 30, 2023, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, terminated Darren Schield's employment by formal letter, in clear retaliation for Darren Schield's refusal to comply with Donald's demands to take actions in violation of federal and state tax laws and civil laws. While the Sterlings have concocted false rationale for such termination based on failed investments related to less than .1% of the assets under Darren Schield's responsibilities, the true reason for his termination was that Donald and Shelly were angry that Darren Schield would not comply with Donald's repeated and

threatening demands that Darren Schield take illegal measures to understate their income and income tax liabilities, as demanded by Donald, despite the outrageous screaming, berating, insulting and threatening language and conduct perpetrated on Darren Schield by Donald. In addition, Donald was angry at Darren Schield for refusing to violate his children's trust assets so that he could free up cash for gifts to mistresses without detection by Shelly.

57.    The retaliatory termination by Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports of Darren Schield on June 30, 2023 actually and proximately caused Darren Schield emotional distress as well as substantial monetary losses, and continues to do so, including lost wages, lost paid vacation, lost health insurance premiums and other lost compensation, in an amount to be proven at trial. This outrageous and despicable conduct and language used by Donald Sterling, Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, to be proven at trial aimed at Darren Schield, including the examples detailed above and the termination on June 30, 2023 of Darren Schield, as threatened, were done in the ordinary course of business of Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports during the period covered by the statute of limitations, and clearly constitute extreme and outrageous conduct.

58.    Such retaliatory termination violates Labor Code Section 1102.5 and public policy designed to protect employees who refuse their employer's direction to take illegal actions.

59.    Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports are vicariously liable as employers of Darren Schield for the tortious conduct of Donald Sterling toward their employee, Darren Schield.

60.    Darren Schield seeks an award against Shelly Sterling, as Trustee of the Sterling Family Trust, the Trust itself and its wholly owned entities, Beverly Hills Properties and L.A. Sports, for compensatory damages, penalties as prescribed by Labor Code section 1102.5, punitive damages, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant prays for judgment as follows:

A. ON THE FIRST CLAIM FOR RELIEF:

1. For judgment in favor of Counterclaimant Darren Schield and against Counter-Defendants, jointly and severally, for compensatory and punitive damages in an amount to be proven at trial of not less than $5,000,000; and

2. For such other relief as the Court may deem just and proper.

B. ON THE SECOMD AND THIRD CLAIMS FOR RELIEF:

1. For judgment in favor of Counterclaimant Darren Schield and against Counter-Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial, but not less than $500,000; and

2. For such other relief as the Court may deem just and proper.

C. ON THE FOURTH CLAIM FOR RELIEF:

1. For judgment in favor of Counterclaimant Darren Schield and against Counter-Defendants, jointly and severally, for compensatory in an amount to be proven at trial, but not less than $500,000;

2. For penalties against Counter-Defendants as prescribed by Labor Code section 1102.5 in an amount to be proven at trial;

3. For cost of suit herein and attorneys' fees against Counter-Defendants, jointly and severally;

4. For such other relief as the Court may deem just and proper.

Dated: August 21, 2024                    Respectfully submitted,

Corrigan & Morris LLP

DEFENDANTS' ANSWER TO FIRST AMENDED
COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

/s/ *Stanley C. Morris*
Stanley C. Morris
Attorneys for Defendants, Darren Schield, Noi Schield, and Schield Wood Products, L.L.C. and Counterclaimant, Darren Schield

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 38-1, Counterclaimant Darren Schield hereby demands a trial by jury on all matters and issues triable by a jury.

Dated: August __, 2024            Respectfully submitted,

Corrigan & Morris LLP

/s/ Stanley C. Morris
Stanley C. Morris
Attorneys for Defendants, Darren Schield, Noi Schield, and Schield Wood Products, L.L.C. and Counterclaimant, Darren Schield

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over eighteen years of age, and not a party to this action. I hereby certify that on August 21, 2024, I caused the foregoing to be served via the Court's Electronic Case Filing (E.C.F.) system on all parties registered for CM/ECF in the above-captioned action.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 21, 2024                         */s/ Stanley C. Morris*
                                                    Stanley C. Morris

DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS; DEMAND FOR JURY TRIAL